KELLER, District Judge.
The two assignments of error relied on relate to two different decrees entered in this cause; the first having been entered December 11, 1893. The errors complained of in that decree are (a) in dissolving the attachment theretofore issued; (b) in discharging the receiver and requiring him to turn the property in his hands over to the defendants M. T. Green, F. J. O’Connell, and Yellow Poplar Lumber,Company, etc.; (c) in awarding costs in favor of said defendants upon the question of the receivership; (d) in requiring the plaintiff “to replead therein by filing a declaration or declarations at law for the purpose of prosecuting his claim for damages herein for alleged breach of contract by defendants, and for other legal damages, and complainant is given until the 1st day of March, 1894, to file said declaration.” Of these matters, all except the last have admittedly been settled by a compromise agreement entered into between the parties on August 16, 1895, and we will now proceed to consider the error in said decree alleged to exist by reason of the direction of the court that the plaintiff recast his pleadings by filing a declaration or declarations at law for the recovery of the damages alleged by him in his bill to have been suffered by reason of an alleged breach of contract, etc.
In order to understand the situation which was then confronting the court, it is perhaps necessary to make a brief statement of- the condition of this suit at the time the decree complained of was entered. Chapman in 1893 had brought a suit in equity against the Yellow Poplar Lumber Company and others, reciting in his bill three certain agreements entered into on February 9, 1893, between himself and Green & O’Connell, representatives and agents of the Yellow Poplar Lumber Company. By the first of these agreements (Exhibit 100) Chapman bound himself to deliver to Green '& O’Connell, at certain points mentioned in said agreement 50,000,000 feet of timber that he owned or controlled “being a portion of 42,000 [trees]' that are bought in the style of Albert Pack, trustee, ahd also 32,000 trees that are owned and controlled by S. F.- Chapman as an individual.” This agreement contained a proviso as follows:
“Provided that, should the trees above referred to fall short of said fifty million feet, then said Chapman agrees to make up the shortage in a manner satisfactory to said Green and said O’Connell.”
" The'-agreement contained further provisions as to the prices to be paid for logs, etc., and provided for the execution by Green & O’Con *203 nell of two notes for $5,000 each to Chapman, the proceeds of which notes were to be used by Chapman to pay off certain claims in the way of purchase money due to C. D. Cushing, a former partner of Chapman, and also to secure the release of a certain bill of sale on Chapman’s interest in the said 42,000 trees, made by him to Geo. W. Peck. The principal of said advance of $10,000 was to be repaid to Green & O’Connell by a deduction of 10 per cent, of the monthly payments due by them for logs under the contract. Chapman agreed to deliver 10,000,000 feet, or more, of the said timber each year, and in case he failed or neglected to carry out the contract it became the right and duty of Green & O’Connell to do so, charging expenses to Chapman and paying him the difference, if any, between the cost and the contract prices. By the second of said writings (Exhibit 101) Chapman sold and conveyed to Green & O’Connell “all my present or future right, title, and interest” in the 42,000 Albert Pack trees, “all also in 32,000 trees controlled by me individually.” By the third of said writings Green & O’Connell agreed that, if the said Chapman performed his part of the first agreement faithfully, they would re-convey to him all their interest in the trees covered by the second agreement. These three agreements read together, clearly show that the agreement, Exhibit 101, was simply intended as a mortgage or assignment of Chapman’s interest in the trees from which he was to make his deliveries under the principal contract, for the security of Green & O’Connell, and that, in the event Chapman failed to perform his contract, they might do so without any question as to their right to cut these trees. It is admitted in the record that Green & O’Connell were officers and agents of the corporation defendant, Yellow Poplar Lumber Company, and that these contracts were made for its benefit, and that it assumed the obligations thereof.
In September, 1893, Chapman filed his bill in the Circuit Court of Wise county, Va., against Green, O’Connell, Yellow Poplar Lumber Company, S. Bitely, J. C. Kerr, and any unknown parties having interest in the subject-matter of the suit, charging that the three der fendants first named had failed to carry out their contract in making payments to him for logs delivered on the heads of streams, and had finally refused to make any settlement with him; that without such settlement and payments he was unable to carry on said contract; that if these defendants had carried out their part of said contract he could and would have made a profit of at least $100,000; that Exhibit 101 above referred to was merely a mortgage, and that Green & O’Connell (and their principal, the Yellow Poplar Lumber Company), having failed to carry out the contract, ought to be required to reconvey the timber to him, Chapman; that he (plaintiff) was entitled to one-third of $2,500, certain profits made in stores of defendants; and that upon an accounting for work done under the contract, defendants were largely indebted to him, etc. Thereupon he prayed that the property of the first three defendants in Virginia be attached, that a receiver be appointed to take charge of the logs and other personal property mentioned in the bill, that he be given a decree for the various sums alleged to be due him, that a commissioner be appointed to make and state an account between the *204 parties, and that Green & O’Connell be directed to reconvey to him' the said trees. The attachment prayed for was issued and levied on certain trees which were owned by Yellow Poplar Dumber Company in Dickenson and Buchanan counties, Va., and a receiver was appointed. Thereafter a petition for removal was filed, and the cause (without objection on the part of plaintiff) was removed to the Circuit Court of the United States for the Western District of Virginia.
On October 4, 1893, the plaintiff filed a petition in the cause, which was treated as an amended and supplemental bill, upon the prayer of which a receiver was appointed by the court and an injunction awarded restraining Green & O’Connell, the Yellow Poplar Dumber Company, their officers, agents, servants, and employés,- from removing any of the cut logs or other personal property placed in the custody of the receiver, and from interfering in any way with the receiver in the performance of his duties. The defendants thereafter demurred to the bill, one of the grounds of demurrer being stated to be that the bill contained both legal and equitable causes of action. In December, 1893, the cause came on to be heard before the late Judge John Paul, in chambers, at Harrisonburg, and on December 11, 1893, Judge Paul passed on order dissolving the injunction, discharging the receiver, releasing the attachment (except as to certain standing trees deemed by him sufficient in value to protect the plaintiff), referring the case to a master for the purpose of ascertaining the state of the accounts between the parties, and containing a clause as follows:
“And the defendants having demurred to the bill on the ground, inter alia, that there is a misjoinder of legal and equitable causes of action therein and moved the court to require a repleader by complainant, the court doth adjudge, order, .and decree that the plaintiff be, and he is hereby, required to replead herein by filing a declaration or declarations at law for the purpose of prosecuting his claim for damages herein, for alleged breach of contract by the defendants, and for any other legal demands.”
From the whole of this order Chapman prayed and was allowed an appeal, but never perfected the appeal asked for, and, being advised that said order, being interlocutory, was not then appealable, filed his declaration at law, claiming $100,000 damages on account of the profits which he would have made had he been allowed to carry out the contract. This suit eventually resulted in a judgment in favor of the defendants. We are now called upon to say whether there was error in that part of Judge Paul’s order quoted above, and, if so, whether there was reversible error.
Before passing upon that question, however, we may say that the order of December 11, 1893, although interlocutory, was unquestionably appealable, by reason of the fact that it dissolved the injunction awarded in the order of October 4, 1893, see Act March 3, 1891, c. 517, § 7, 26 Stat. 828, as amended by Act Feb. 18, 1895, c. 96, 28 Stat. 666 [U. S. Comp. St. 1901, p. 550]. And it is well settled that on an appeal from an interlocutory order the court has power to hear the whole case and dispose of it. Clark v. McGhee, 87 Fed. 789, 31 C. C. A. 321; Mayor of Knoxville v. Africa, 77 Fed. *205 502, 23 C. C. A. 252; Bissell Carpet Sweeper Co. v. Goshen Sweeper Co., 72 Fed. 545, 19 C. C. A. 25; Consol. Piedmont Cable Co. v. Pacific Cable Ry. Co., 58 Fed. 226, 7 C. C. A. 195; Smith v. Vulcan Iron Works, 165 U. S., 518, 17 Sup. Ct. 407, 41 L. Ed. 810.
However, while we think the interlocutory order of December 11, 1893, by reason of the fact that, inter alia, it dissolved an injunction, might have been appealed from, we by no means hold that plaintiff has lost his rights by failing to appeal. It is true that as to the injunction his right is gone, but as to the matter here complained of it is in the same condition as though the decree had contained no reference to an injunction. What, then, was the order of the court? Judge Paul ordered what he called a “repleader.” We do not think that it was technically a judgment of repleader, as that term is applicable to a case where issue has been joined on an immaterial point. Mr. Minor, in his exhaustive Institutes (volume 4, pp. 857, 858) says:
“A motion, for a repleader is appropriate where the unsuccessful party, on examination of the pleadings, conceives that the issue joined and decided was on an immaterial point, not proper to determine the action. In such a case, therefore, the court not knowing for whom to give judgment, will award a repleader, that is, will order the parties to plead de novo, for the purpose of obtaining a better issue.”
Moreover, a judgment of repleader does not lie after a demurrer (Perkins v. Burbank, 2 Mass. 81), unless, perhaps, where the answer and replication are bad (Potter v. Titcomb, 7 Me. 302). This order, although in the form of an order to file a declaration or dec* larations at law on the law side of the court, was, in effect, a permission so to do, with the alternative of having that feature of his bill dismissed or ignored. See Fletcher v. Burt, 126 Fed. 619, 63 C. C. A. 201. This is the manifest purpose and effect of the order complained of. The bill had been attacked by a demurrer (not copied into the record), and the court offers to the plaintiff the option of filing a declaration on the law side of the court, or of having what the court decided to be a legal cause of action stricken from the bill. Therefore, to determine whether the court was in error, we must determine whether the bill as it stood at the time could have been sustained in a court of equity, and we have no hesitation in saying that it could not.
In the first place, we think it was open to the objection stated in the order to have been specifically raised by the demurrer, namely, that it sought to combine in the same bill distinct and separate legal and equitable causes of action. It is somewhat difficult to tell from the allegations of plaintiff’s bill whether he was seeking herein to recover lost profits or damages for the alleged breach of the contract. • The prayer of the bill throws no light upon the question. The averments of the bill in that regard are as follows:
“Your orator further says that if the said company, said Green & O’Connell, had complied with their contract aforesaid, and had not refused to carry out the same, he could and would have made a clear net profit thereon of $100,000.00; that the place at which the said logs were to have been delivered to the said company is in the heart of the Cumberland Mountains, *206 several hundred miles from any point at which there is a general market for such logs, and that there is no general market whatsoever for the said logs at or near the place where the same were to be delivered as aforesaid, and that the difference between the prices which the said company and the said Green & O’Connell agreed to give your orator for said logs, and the price for which your orator could now sell the same, if, indeed, he could find a purchaser at any price amounts to a vast sum, to wit, the sum of $100,-000.00; and that the damage resulting to your orator by reason of said failure of the Yellow Poplar Lumber Company and said Green & O’Connell to comply with and carry out said contract amounts to that sum.”
If we are to understand that, as to this feature, the suit was for damages as such, for breach of-the contract, the case is very similar to that of La Mothe Manufg. Co. v. National Tube Works Co., Fed. Cas. No. 8,033, wherein the complainant prayed for an injunction, the cancellation of an agreement and damages for alleged breaches of the agreement. The late Mr. Justice Blatchford, in his opinion said:
“The present complaint must be recast into two cases, one at law and one in equity. Dill Rem. Causes, 41, and cases there cited. In Fisk v. Railroad Co., Fed. Cas. No. 4,829, the plaintiff in a removed suit divided it into a legal action and an equitable action in this court, and the practice was approved. See Bennett v. Butterworth, 11 How. 669, 13 L. Ed. 859; Thompson v. Railroad Co., 6 Wall. 134, 18 L. Ed. 765; Montejo v. Owen, Fed. Cas. No. 9,722.”
In giving his reasons for this action, Judge Blatchford says;
“It is urged for the plaintiffs that, as the court has jurisdiction to grant the equitable relief asked for, it would retain the jurisdiction, to award in equity the damages claimed; that, on proof of a breach of the agreement and of damages sustained thereby, the equitable relief asked for would be granted; and that therefore there is no necessity for repleading. There is ‘a plain, adequate, and complete remedy’ at law in respect to the damages claimed, and to allow them to be recovered in equity and to deprive the defendants of a trial by jury in respect to them would violate the provisions of section 723 of the Revised Statutes [U. S. Comp. St. 1901, p. 583].”
See, also, Fletcher v. Burt (C. C. A., 6th Circuit) 126 Fed. 619, 63 C. C. A. 201.
But, if we treat the bill as praying for a recovery of the profits eo nomine, which plaintiff would have made had the defendants faithfully carried out the contract with him, the situation is not helped any—on the contrary, rendered all the more difficult—because, in. such a case the relief sought is inconsistent. In that view the bill seeks the reconveyance of the very trees by the cutting of which the contract with defendants was to have been performed, and likewise seeks to recover the profits which plaintiff claims would have been made by the cutting and delivery of the logs from these trees. In other words, as put by the plaintiff, he seeks to recover a “clear net profit” of $100,000, which he avers he would have made, had he been allowed to carry out the contract, which carrying out of the contract would have involved the cutting of all the trees conveyed (and possibly more), and at the same time seeks to recover (by re-conveyance) the trees out of the cutting of which such alleged profit would have been made. He seeks to recover his entire profit on the . contract as though it had been carried out, and at the same time (and *207 in the same suit, seeks the reconveyance of the same timber which, if cut, would have yielded the profit, and from which, if reconveyed to him, he might by a new contract make another $100,000 profit. These causes of action were clearly inconsistent, and the court was right in holding that they could not be joined in a bill in equity. So joined there was no equity in the bill. If Chapman was entitled to recover from the defendants all the profit he would have made, had he completed the contract in accordance with its terms, then clearly he would not be entitled to recover possession of the trees out of the cutting and delivery of which such profit would have been made, and which had been conveyed to the defendants for the very purpose of securing the completion of the contract.
Putting the matter in another way: If Chapman was entitled to recover all the profits he would have made upon a full carrying out of the contract, it would only be by reason of a breach of such contract by defendants, and it would be a purely legal cause of action, which, if he were successful, would be a full and absolute satisfaction for his entire claim. The truth was that there were two causes of action separate from each other, one a suit for damages (not profits) for breach of the contract, and the other for reconveyance of the title to the trees and an accounting, and the court did not err in its order of December 11, 1893. The plaintiff has had a full determination of his right before a jury upon a question which it is peculiarly the province of a jury to pass upon. There is no merit in the first assignment of error.
The second assignment of error relates to the decree entered July 19, 1904, and assigns error in the following particulars:
“(a) In sustaining the exceptions, or any of the exceptions to the report of Master Commissioner H. Peyton Gray, in the said canse, and in overruling in all respects the said report, and in overruling the said report in any respect whatever.
“(b) In dissolving the injunction theretofore, to wit, October 10, 1900, granted in said cause.
“(c) In dismissing the said cause and refusing to grant any and all of the relief prayed for by complainant.
“(d) In adjudging that the Yellow Poplar Lumber Company recover of the said Chapman any costs whatsoever in the said cause.”
On August 16, 1895, and after Chapman had recovered a judgment in the law action, but before the final determination of said action on appeal, an agreement of compromise was entered into between Chapman and the Yellow Poplar Lumber Company, by which, among other things, it was agreed:
“That the Yellow Poplar Lumber Company shall forthwith release and ■ cause to be reconveyed to said Chapman all the standing trees conveyed or mortgaged by said Chapman to Green & O’Connell, except the ‘Pack trees’ ; and it is further agreed that as soon as said Chapman settles said balance of $5,050, either by paying the same or by crediting it on said judgment after the same shall have become final, said company shall release and cause to be reconveyed to said Chapman the said Pack trees, but until the said balance of $5,050 is settled as aforesaid the said company shall retain its interest in said Pack trees as security therefor.”
A number of other matters were covered by the compromise agreement, none of which, however, are material to this inquiry, ex *208 cept a stipulation that the equity cause was to be revived against the representatives of Green (who had meantime died), and was then to be continued to await the final determination of the law cause, for the purpose (in the event of the reversal of the judgment in the law cause) of enabling Chapman to insist on the alleged error of the court in directing said lawsuit to be brought, and for the further purpose of compelling, if necessary, the reconveyance by O’Connell and the representatives of Green of the said timber. The cause was accordingly revived and continued. The law judgment in favor of Chapman was reversed, and he paid to the Yellow Poplar Lumber Company the $5,050 recited as due it in the compromise agreement, and received a reconveyance of the “Pack” trees; but he never received any reconveyance of the other standing trees, which under the agreement of compromise were to have been “forthwith” released and caused to be reconveyed.
On December 23, 1899, Chapman filed his bill of revivor and supplemental bill setting up the material matters of the agreement of compromise and the failure on the part of the Yellow Poplar Lumber Company to have the said standing trees reconveyed; alleging that since the date of said agreement the defendant company has cut and converted to its own use an unknown number of the trees, which should under the agreement, have been reconveyed; reviving the cause against the personal representatives of Green; praying that O’Connell and the representatives of Green may be required to reconvey such of the trees as are still left standing, that a reference may be had to a commissioner to ascertain the number and dimension of the trees cut and converted to its use by the Yellow Poplar Lumber Company since the date of said compromise, and that complainant may have decree against said company for the reasonable value of said trees so cut by it less the amount of the purchase money owed by complainant for such trees, etc. To this bill an answer was filed by the Yellow Poplar Lumber Company which was clearly insufficient, but no exceptions appear to have been taken by plaintiff to said answer; the decree of May 17, 1900, showing that he replied generally thereto.
. That decree referred the cause to H. Peyton Gray, master commissioner, with directions to ascertain and report: (1) The number of trees that were standing on the ground in Wise, Dickenson, and Buchanan counties in September, 1893, which complainant owned or controlled and had conveyed or mortgaged to M. T. Green and F. J. O’Connell, and how many of said trees, if any, were thereafter in any manner purchased or handled by the Yellow Poplar Lumber Company, or otherwise converted to its own use. (2) The time when such trees were converted, if any were so converted, and the reasonable value at such time and at different periods up to date. (3) Any other matter which either of the parties hereto may desire to have said master hear evidence and report upon. The master on May 10, 1901, filed a full report finding on all questions of fact referred to him, and fully discussing the questions of law incidentally arising upon the hearing, which report is found in the record, to which report excep *209 tions were filed by both parties. The master, upon the evidence before him, found that the Yellow Poplar Lumber Company, after having made its agreement with plaintiff to “forthwith release and cause to be reconveyed to said Chapman all the standing trees conveyed or mortgaged by said Chapman to Green & O’Connell, except the trees known as the ‘Pack,’ ” not only did not forthwith cause this to be done, but, while not directly purchasing any of these trees, that it furnished money for the purchase of logs from these trees and for the payment by the persons cutting the timber of the purchase price to Stephen Bitely and other original owners of the trees known by said company to have been embraced in the 32,000 trees “owned and controlled” by said Chapman in 1893, and conveyed or mortgaged to Green & O’Connell, and agreed to be “forthwith” released and reconveyed by the compromise agreement of August 16, 1895. The court, by its final decree of July 19, 1904, sustained all the exceptipns of the defendants to the report of the master, and overruled said report in all respects.
The learned judge below filed in the case an opinion or memorandum, giving the reasoning upon which he based his action overruling the report of the master, from which it appears that he based his decree upon the proposition that the allegations of the amended and supplemental bill and the terms of the compromise agreement of August 16, 1895, will not support the claim of plaintiff to the relief prayed for, other than for the release and reconveyance of the trees mentioned therein, and hence that the report of the master is overruled, not upon any consideration as to the insufficiency of the facts found to support the allegations of the said amended and supplemental bill, nor yet upon any finding by the court that the evidence given before the said master was insufficient to warrant the findings of fact by the said master, but that, as to any claim by plaintiff on account of the alleged conversion of trees (or its equivalent) by the Yellow Poplar Lumber Company, no recovery can be had under said amended and supplemental bill. As illustrating the view of the learned judge below, we quote the first two paragraphs of his memorandum or opinion filed in the cause:
“First That the amended and supplemental bill filed herein on the 10th day of October, 1900, in so far as it seeks to recover against the defendant the Yellow Poplar Lumber Company for the alleged conversion by said company of the trees referred to in said bill—that is, the difference between what the complainant was to have paid the parties with whom he had contracted for said trees, and what they were worth when subsequently cut, some years later, by reason of the increased value of said trees, and which complainant insists is the damage resulting to him by reason of the alleged failure to convey said trees—cannot be maintained; such cause of action being totally different from the relief sought in the original bill.”
“Second. That under the compromise agreement entered into between the parties on the 11th [sic] day of August, 1S95, the sole purpose for which an amended and supplemental bill can be maintained for the revival of the cause against Green & O’Connell is with the view of having the trees in question released and reconveyed to the complainant; that such agreement does not authorize the institution and maintenance of an amended and supplemental bill of the character filed, further than to secure the release and *210 reconveyance of any Interest that said Green & O’Connell or the Yellow Poplar Lumber Company may have had in the trees in question.”
The above extracts will sufficiently illustrate the view taken by the learned district judge with reference to the subject-matter of the amended and supplemental bill, and will suffice to show that the decree complained of was rendered without regard to the findings of fact by the mastér and without consideration of the evidence upon which said findings were based. We think the court erred in thus holding, and will briefly give our reasons for our views.
1. While it is true that the original bill does not pray for the relief prayed for and refused in the amended and supplemental bill, it is only true because this matter arose pending the suit, by the fault, as alleged, of the defendant, and the relief herein prayed for is purely incidental and ancillary, to enable the plaintiff to secure that full measure of relief which a reconveyance of these trees at the time the bill was filed, or even at the date of the agreement of August 16, 1895, would have afforded him. The voluntary agreement of August 16, 1895, to “forthwith” release these trees and cause them to be reconveyed, had, in so far as it went, all the validity and force of a decree to that effect, and it must be admitted that, had such a decree been passed, and the defendant the Yellow Poplar Lumber Company, instead of forthwith carrying the same into effect, had violated the decree by converting to its use certain of these trees, or by intriguing with others for the purchase of logs cut therefrom before a reconveyance to plaintiff, such an amended and supplemental bill would clearly have lain, because nothing short of it would give that measure of relief contemplated by the decree itself.
2. The contention that under the terms of the compromise agreement the equity cause was continued (so far as this matter is concerned) only for the purpose “of compelling said O’Connell and the representatives or heirs of said Green to reconvey said timber” is a conclusion with which, in view of the fact that the agreement was made with the Yellow Poplar Lumber Company, whose conduct, it is alleged, has been such as to emasculate the vitality from this provision for relief, we cannot agree. This provision must be properly interpreted, and, so interpreted, it must and does include all that is essential to its validity. It was not contemplated that a bill would have to be filed to secure the reconveyance of these trees. That reconveyance the Yellow Poplar Lumber Company agreed to cause to be made forthwith, and, as before stated, that agreement had all the force and solemnity of a consent decree. As to the sufficiency of this amended and supplemental bill, it may be said that no demurrer was interposed to it, and, if the bill was insufficient, it should have been demurred to. But we have no doubt of the legal sufficiency of the bill, and no doubt of the jurisdiction of the court to entertain it in this suit. Indeed, the matter appears, to us to be peculiarly a subject for cognizance by way of a supplemental bill, as arising pending the suit, by the act of the principal defendant and affecting the sufficiency of the relief prayed for in the original bill. 4 Minor’s Inst. p. 1262 (1131), and authorities there cited.
*211 Having this view, it is perhaps unnecessary to advert to the fact that there is a very grave question as to whether Chapman could have sustained an action at law, on account of the fact that such title as he had was purely equitable. In Northern Pacific Railroad Co. v. Paine, 119 U. S. 561. 7 Sup. Ct. 323, 30 L. Ed. 513, the court said:
“A mere equitable claim, which a court of equity may enforce, will not sustain an action at law for the recovery of land or anything severed therefrom.”
That was an action in trover to recover certain logs cut from plaintiff’s land.
Other reasons might be advanced to show the propriety of the filing of this supplemental bill, but we deem the foregoing sufficient. In view of the fact that apparently the court below did not consider the report of the master at all, but overruled it upon the ground that under no circumstances could the relief prayed for in the amended and supplemental bill be granted, we content ourselves with a simple reversal of the decree entered 'July 19, 1904, and remand the case to the Circuit Court of the United States for the Western District of Virginia for such further proceedings, not inconsistent with this opinion, as may be necessary and proper in the premises.
Reversed and remanded.