CHAPMAN v. YELLOW POPLAR LUMBER CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 11, 1909.)

No. 826

LOGS AND LOGGING (§ 3*) — CONTRACT TO CONVEY TREES — CONSTRUCTION AND OPERATION—SUIT TO ENFORCE—DEFENSES.

Complainant conveyed certain standing trees to officers of defendant lumber company by an absolute conveyance, taking back an agreement for a reconveyance on his performance of a contract to furnish to defendant's mills a certain number of logs therefrom at prices therein stated. A part of the trees had been purchased by complainant from a third person under a contract which was executory, which fact was known to defendant. Complainant instituted a suit in equity for breach of the logging contract, pending which the parties made a settlement of all matters between them except complainant's claim for damages, and by which defendant agreed to "forthwith release and cause to be reconveyed all the standing trees" covered by the original conveyance from complainant, including those held under such executory contract. The vendor in such contract and defendant had previously joined in securing the turning over of all the property to defendant by a receiver appointed at the instance of complainant. Having failed to reconvey the trees, complainant filed a supplemental bill in the pending suit to enforce the contract, and for an accounting with respect to trees alleged to have been converted by defendant. *Held* that, having taken title and maintained its possession of the trees with knowledge of the terms of the contract by which they had been held by complainant and covenanted in the settlement to reconvey the same, defendant was bound to protect the title by fulfilling the contract, and could not set up as a defense that the title had been forfeited for noncompliance with its requirements.

[Ed. Note.—For other cases, see Logs and Logging, Dec. Dig. § 3.*]

Appeal from the Circuit Court of the United States for the Western District of Virginia.

J. F. Bullitt (Bullitt & Kelly, on the brief), for appellant.

George S. Wright and Harvey T. Hall (Robert E. O'Hanly, on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and BOYD and DAYTON, District Judges.

DAYTON, District Judge. In view of the fact that the matters in controversy here, in one form or another, have been in litigation for near 15 years, and have thrice before this been before this court by appeal or writ of error (74 Fed. 444, 20 C. C. A. 503; 89 Fed. 903, 32 C. C. A. 402; 143 Fed. 201, 74 C. C. A. 331), a very brief statement of facts will be necessary.

Chapman, the plaintiff and appellant, by various contracts secured control of two parcels of timber trees, one of 42,000, known as the "Pack trees," the other 32,000, known as those "controlled by him individually," situate in Wise, Dickenson and Buchanan counties, Va. On February 9, 1893, by deed absolute upon its face, he sold and conveyed these trees to Green and O'Connell, officers and agents acting for the defendant lumber corporation. On the same day he entered into a stocking contract to cut and deliver, at fixed points, from these

trees 50,000,000 feet of logs, upon terms now immaterial to state. On the same day, and as a part of the transaction, Green and O'Connell executed and delivered to him a contract whereby they agreed, upon his faithful performance of his logging contract, to convey back to him all their interest in these two lots of trees. Chapman filed the original bill herein, charging the defendant lumber company and its officers with breach of this stocking contract of his by preventing him from executing it and refusing to pay for logs delivered under it, and claiming $9,000 for logs delivered and $100,000 for damages for its breach, and demanding a reconveyance of the trees. The bill was supported by attachment sued out by reason of the nonresidence of the defendants. The court below refused to maintain in equity the claim for damages. He instituted his action at law, which, after twice being before this court, was determined adversely to him.

Pending this equity suit an agreement was entered into, August 16, 1895, whereby all matters in controversy between parties were settled except this claim of Chapman's for damages for the breach of the contract, and the defendant corporation bound itself to "forthwith release and cause to be reconveyed all the standing trees conveyed or mortgaged by said Chapman to Green and O'Connell" except the Pack trees, title to which was retained to secure the debt of $5,050 ascertained by the agreed settlement to be due from Chapman to the corporation. This debt was subsequently paid by Chapman, and these Pack trees were conveyed back to him and enter no longer into the controversy. The company wholly failed to convey back the other lot of 32,000 trees, and thereupon, December 23, 1899, Chapman filed his supplemental bill, alleging this failure to convey back these trees, that 16,000 of them had been purchased by Chapman from Bitely, and of these 16,000 "Bitely trees" the defendant company had, since the compromise agreement and its contract therein to reconvey, converted the greater number thereof to its own use. An accounting was prayed for of such trees so converted. Upon this bill and answers thereto denying its material allegations, charging Chapman to have no title by reason of his contract of purchase from Bitely, of the forfeiture by him of such contract, and the reinvestment in Bitely of the right to said trees, the court below, among other things, referred the cause to a master to ascertain and report the trees standing at the time of the compromise agreement, how many had been purchased or handled thereafter or converted by the lumber company, and their reasonable value at the time. The master made his report, exceptions were taken thereto by the defendant corporation, sustained by the court below, the learned judge then presiding ruling that the supplemental bill could only be maintained for the purpose of requiring a reconveyance of the standing trees from Green and O'Connell, and not for an accounting for those converted by the lumber company since the compromise agreement. This decree was entered July 19, 1904. Chapman appealed from this, and on July 20, 1906, this court reversed it, holding that under the allegations of the supplemental bill Chapman was entitled to such accounting, but without directly passing upon the facts as found by the master sustaining Chapman's demand. Thereupon the cause came on to be heard again before the

same judge, sitting specially, upon the master's report, exceptions filed thereto, and evidence therewith; whereupon on December 21, 1907, a decree was again entered sustaining defendant's exceptions to the master's report, and upon the merits dismissing the plaintiff's bills and supplemental bill, and dissolving the injunction that had been awarded in course of the proceeding against the defendant company's judgment for something over $4,000 costs adjudged against Chapman in the defense of the action at law until his claim in equity could be determined. From this decree Chapman has again appealed to this court.

It will be seen that the issue has narrowed itself down to one almost wholly of fact. With all due respect to the learned judge rendering this last decree, and who is so earnest and sincere that he has frankly said that "after giving the case the most mature consideration, and the fullest examination, especially in the light of the opinion of the Circuit Court of Appeals rendered herein on the 6th day of February, 1903, the court does not find the slightest reason for changing the conclusions heretofore announced on the merits of the case, upon which it was the purpose and object of the opinion filed on the 29th day of October, 1903, to pass, as well as upon the several legal phases of the case considered by the Circuit Court of Appeals in its opinion," we are constrained to hold that he is in error. Incidentally, it is to be remembered that the former decree, reversed by this court, had been rendered upon the merits of the cause and not upon a demurrer to the supplemental bill, and while this court contented itself with basing its reversal upon the denial of the court below of the plaintiff's right to maintain the supplemental bill for an accounting at all, yet it is hardly to be assumed that it would have done so for this reason, if, upon the examination of the whole record then before it, it had been of the opinion that the evidence wholly failed to justify any finding in this particular in plaintiff's favor. But aside from this, we are constrained to wholly disagree with the opinion of the court below that Green and O'Connell and the lumber company can set up and successfully defend this demand by saying that Chapman had forfeited his contract with Bitely and no interest was remaining to convey back. This was not the case when on February 9, 1893, Chapman conveyed by deed absolutely these trees to Green and O'Connell for the lumber company. That this was an absolute conveyance of these trees made by Chapman when his contract with Bitely was in full force cannot be questioned. There was, under every fair construction of law and of the facts, no ground to claim forfeiture of this contract with Bitely when on December 11, 1893, Bitely joined with the lumber company and its officers, Green and O'Connell, in seeking and securing the court below to turn over "all the property" then in the receiver's hands and authorize the company and its said officers to "perform the contract," referring to the stocking contract, to secure the performance of which Chapman had conveyed absolutely these trees. It is untenable to urge that this sale, absolute on its face, of these trees, was only a security, creating no obligations on the part of the grantees to protect Chapman's rights and interest therein. That it was designed as security to secure the completion of Chapman's

stocking contract there can be no question, but at the same time, by a separate contemporaneous writing, these grantees assumed a trust obligation on their part to reconvey these trees to Chapman when the contract was completed. This reconveyance was dependent upon conditions that might or might not arise, and no principle of equity or good conscience would authorize or justify these grantees, by either their own negligent or willful acts, in defeating the arising of these conditions requiring them to reconvey. They knew when they took the deed of sale from Chapman the terms of the contract with Bitely by which he held these trees. They knew the conditions by which this contract was to be saved from forfeiture. When they took over the property with this trust to reconvey, they did so with the legal responsibility attached to keep the title to the trees intact by complying with the necessary conditions of the Bitely contract. This was true not only by reason of this contract with Chapman, but it was doubly true after the court of equity had assumed control of the matter, and at their instance and that of Bitely had required the turning over of the property to the lumber corporation "to perform the contract." This control so given by the contract and by the court was not disturbed until conditions did arise whereby the obligation to reconvey on the part of the lumber company to Chapman became imperative. This was upon the execution of the compromise agreement of August 16, 1895, in which it bound itself to "forthwith release and cause to be reconveyed all the standing trees conveyed or mortgaged by said Chapman to Green and O'Connell."

What was to be conveyed? A mere forfeited, worthless, and dead paper title? Not so. If any costs or expenses had been incurred by Green, O'Connell, and the lumber company in preserving the property, in complying with the conditions of the Bitely contract up to this time, they had the right to demand recompense from Chapman possibly therefor, and it is to be assumed from the terms of the contract settling all matters of controversy but one fully set forth that they did consider and include this, but it is never to be admitted that by their own negligence and wrong they could allow this property, in their possession both by contract and by the court's order, to become forfeited and valueless. Nor can they be heard to defend that they never understood their contract with Chapman to mean other than that the trees were to stand as security for the performance of the stocking contract, with possession never in them in fact but remaining in Chapman, whose duty was therefore to comply with the terms of the Bitely contract necessary to avoid forfeiture. When men and corporations make contracts, the law imposes upon them the obligation to understand their legal effect and requirements. The sale by Chapman to Green and O'Connell, as we have said, is an absolute deed of sale without condition carrying immediate possession. The contract of Green and O'Connell to convey back in no way disturbs such possession, but sets forth only such obligation to reconvey upon conditions subsequent. Therefore, if any forfeiture of the Bitely trees occurred while the title thereto remained in Green, O'Connell, and the lumber company prior to the compromise agreement, they are completely estopped from defending on account thereof. After the compromise agreement made, the matter presents

the simplest solution. The company bound itself to "forthwith release and convey back all the standing trees conveyed or mortgaged by said Chapman to Green and O'Connell." It is carefully to be noted that this language does not require a reconveyance only by the company of "all the right, title, and interest" it then had in the trees. The clear and very manifest purpose of this language was to require it to convey back with the same good and unforfeited title by which it derived, under Chapman and the court, all the trees so derived, that were then standing on the ground uncut. If they were not in condition to do this, it was their own fault. They in legal effect bound themselves to do so. But instead of "forthwith reconveying" they utterly failed to so convey, wholly neglected to care for the trees, allowed numerous of them to be cut into logs by various persons, and then bought these logs, or a considerable portion thereof, from these outside parties. This was the grossest negligence on their part, and practically the only excuse they can give now is that they were not asked to reconvey under their obligation in the contract to do so, and they never understood themselves to be in possession of the trees under their deed from Chapman and the order of the court. This will not avail them. In this case the master with much labor and ability has discussed the legal propositions involved, supporting his views with numerous citations of authority which in our opinion fully sustain them. We therefore refrain from further discussion of the legal principles, contenting ourselves with a reference to this discussion of the master incorporated in the record.

Finally, we are constrained to disagree with the court below in its ruling that the evidence upon which the master's findings are based is so vague and uncertain as to not warrant them. While it is to be admitted that it is not wholly complete and satisfactory, it is to be remembered that the reason of it being so is wholly the fault of the lumber corporation and its officers. As we have shown herein, they, by the legal terms of their contract with Chapman and those of the court's order, were in possession of these trees; it was their duty to see to it that they were not either cut, carried off, or willfully destroyed, because they were bound to forthwith reconvey them to Chapman. If any were so cut and taken away, it was their duty to know, because it was their duty to account for them. The burden of proof was upon them as to this.

Under such circumstances, we think the master was very conservative indeed both as to the number of the trees found taken since the compromise agreement, and as to their value when so taken. It follows that the decree of the court below complained of must be wholly reversed and annulled; the cause must be remanded to the court below with instructions to reinstate the injunction of October 10, 1900, and also the attachment sued out in the cause; to overrule all the exceptions to the master's report made by both plaintiff and defendant and confirm said report in toto; to ascertain from said master's report, or from a supplemental one required to be made by him, the defendant company to be liable to the plaintiff Chapman for 5,510 trees of the value of $3 each, less the amount which under the Bitely contract with Chapman would be due Bitely and for which he would have a lien, and

which because of such lien the company would be entitled to retain from Chapman and pay to said Bitely in discharge of such lien, also less the judgment for costs enjoined, and decree the balance with interest from the year 1898 (when said trees were cut) to be paid to Chapman, with all costs of said equity cause arising under the supplemental bill, including the costs of the master's report, and the petition filed for injunction to be then perpetuated. And costs in this court are awarded appellant Chapman.

Reversed.